385 So.2d 580 (1980)
Alcina Leblanc, Wife of/and Henry S. FORD
v.
INDEPENDENT BAKERS SUPPLY, INC.
No. 11183.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1980.
Rehearing Denied July 21, 1980.
Leon C. Vial, III, Hahnville, for plaintiffs-appellees.
Adams & Reese, Robert A. Vosbein, Paul G. Pastorek, New Orleans, for defendant-appellant.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
GULOTTA, Judge.
Defendant-lessee appeals from a judgment of eviction. The plaintiff-lessors had sought eviction because of non-payment of rent for September 1979, and also because lessee allegedly performed alterations to the leased premises without the written consent of the lessors, contrary to the lease provisions. In his oral reasons for judgment, the trial judge stated the lessee may have violated the lease in making alterations without permission, but he indicated *581 this was an issue that "would have to be litigated further". Instead, he ruled in plaintiffs' favor on the issue of untimely payment of rent.
Beginning in July 1979, there had been some confusion between the lessors and lessee regarding rental payments, stemming from the return as NSF of lessee's July rent check. A series of checks passed back and forth, some as replacement checks and some for subsequently accruing rental. In September lessee thought the rent payments were up to date, when actually the September payment was still due.[1] On September 14, 1979, lessors' attorney sent a letter to lessee, stating,
"I represent Henry S. Ford, lessor in your lease of August 26, 1975.... This is to inform you that you are in violation of the terms of that agreement in that the rental for September is delinquent and for the more important reasons that extensive alterations have been done to the building without the written permission of the lessor. You are hereby notified to vacate the premises within five days from receipt of this demand or eviction proceedings will follow."
In response to this letter, on September 21st, lessee sent lessors another check in payment of the September rent, but the lessors refused to cash the check and returned it to lessee. On September 27th lessor filed suit for eviction.
The pertinent provisions of the lease are as follows:
"Lessee is obligated not to make any additions or alterations whatever to the premises without written permission. * * *
Should the Lessee at any time violate any of the conditions of this lease ... or fail to pay the rent ... punctually at maturity, as stipulated; ... and should such violation continue for a period of ten (10) days after written notice has been given Lessee, then, at the option of the Lessor, the rent for the whole unexpired term of this lease shall at once become due and exigible; and Lessor shall have the further option .. to immediately cancel this lease, .. all without putting Lessee in default,... Lessee hereby assenting thereto and expressly waiving the legal notices to vacate the premises. * * *" (Emphasis added).
Under the terms of the lease, it is clear, lessor may cancel the lease only (1) if he gives written notice to the lessee of the alleged violation, and (2) if the lessee continues the violation for ten days after the notice is given.
The first question is whether the lessor's September 14th letter constituted sufficient written notice of the alleged violations. We find it did. Although the September 14th letter was expressed in terms of a notice to vacate the premises, it did advise lessee of the violations alleged (i. e., "the rental for September is delinquent", and "extensive alterations have been done to the building without the written permission of the lessor"). Under these circumstances, we conclude the letter constituted a proper notice to trigger the running of the 10-day curative period under the lease.[2]
However, lessee tendered the unpaid rent (lessee's September 21, 1979 rent check) to lessor within ten days after the notice. Accordingly, the lessee complied with the terms of the lease and it is not subject to cancellation for nonpayment of rent. See DiFatta v. Campagna, 157 So.2d *582 633 (La.App. 4th Cir. 1963); Goldblum v. Harden, 188 So.2d 630 (La.App. 4th Cir. 1966).
It is uncontroverted that in July 1979 the sublessee performed work to repair the air conditioning system because the existing compressor had failed, resulting in temperatures inside the leased premises of 95° to 100°. The repairs included installation of a new compressor in the rear of the building rather than on the roof, with enlargement of the return-air vent. Two holes were cut into the roof to run pipes into the building for the new system. Lessee does not claim that written permission from lessor was sought for this work, but argues this work was simply repairs which lessee was required to do under the lease.[3] Lessor contends the cutting of the roof holes was an alteration made without written permission, and was a violation by the lessee subjecting the lease to cancellation.
At the Rule for Eviction, lessor testified he was aware of the work done on the air conditioning system, and in fact was on the leased premises when the workers were cutting the holes in the roof. In fact, he even went up on the roof and watched them cut the tin off the roof. Asked whether the workers cut a new hole or enlarged an existing one, he said he didn't know, but didn't think there had been a hole there before. His impression was that the work was done because the air conditioner was leaking and they needed the holes to blow air inside the building. Lessor further testified no one ever requested permission to do the work and he never gave any written consent for it. He admitted, however, that he made no attempt to stop the cutting of the holes in the roof, and that he never protested or said anything to either lessee or the sublessee about it.
The trial judge did not base his decision of the question on whether this work was an "alteration", although he did state he felt it was "somewhat of a violation." Regardless whether the work was an "alteration" or simply a "repair", we believe the requirement of written consent was vitiated by the lessor's implied consent.
In Illinois Cent. R. Co. v. International Harvester, 368 So.2d 1009 (La.1979), the Supreme Court enunciated the codal principles to be followed in determining a lessor's implied consent to a modification of the terms of a written lease.
"Every contract or modification of a previously concluded agreement requires the concurrence of the consent of the parties.... Consent results from a free and deliberate exercise of the will of each party where the intent has been mutually communicated or implied, ... and accepted by the party to whom a proposal is made....
Consent may be given either expressly or by implication, ... but the cases in which consent is implied are particularly determined by law.... Thus, except in those instances in which the statutory law creates a legal presumption, the mere silence of an offeree should not, in principle, be considered as involving acceptance on his part. His consent can result from silence, however, when combined with other facts or acts so as to imply or indicate his consent unequivocally. * * *" 368 So.2d at 1011, 1012. See also, LSA-C.C. arts. 1766, 1779(2), 1781, 1798, 1800, 1811, and 1816.
Applying these rules to the case before us, we believe the lessor's silence and inaction regarding the work done on the leased premises was a waiver of the written consent requirement in the lease. Particularly important here are the facts that not only was he aware the changes were being made, but also he actually stood by and viewed the progress of the work without protesting or objecting. Further, there were no other actions or discussions between the parties which would contradict the implication of unequivocal consent. Nothing was ever said until the letter of September 14, 1979.
*583 For the foregoing reasons, the judgment of the trial court is reversed and plaintiffs' suit is dismissed at their cost.
REVERSED AND RENDERED
NOTES
[1] Rent check dated 7/13/79 was returned for insufficient funds, but redeposited and cashed. On a rent check dated 7/31/79, payment was stopped by lessee. Rent check dated 8/15/79 was cashed. Rent check dated 9/21/79, in response to demand letter, was never deposited.
[2] We distinguish the cases of Grimes, Austin & Stark, Inc. v. L. Stark, Inc., 347 So.2d 908 (La.App. 3rd Cir. 1977) and Dietrich v. Davis, 246 So.2d 710 (La.App. 2nd Cir. 1971), both of which held that notices to vacate did not constitute proper written notice of lease violations. In the Grimes case, however, the notice to vacate apparently did not state what the violation was. In the Dietrich case, the lease set forth detailed requirements of what the notice of violations had to contain and how it had to be sent, and these requirements were not met.
[3] The relevant section of the lease provides,

"The within leased premises and appurtenances, including the ... heating system, if any, and all other fixtures, are accepted by the Lessee in their present condition,.... The Lessee agrees to keep them in the same order as received, during the term of this lease...."